*365 OPINION.
TRAmmell:
The issues involved in this appeal are: (a) The . amount of loss, if any, sustained in the year 1919 on account of taxpayer’s investment in the hotel project which was begun during that year and abandoned the same year, (b) The amount of loss sustained by the taxpayer on account of his investment in the stock of the Eastland, Wichita Falls & Gulf Railroad Co. (c) The amount of gain realized by the taxpayer on the sale of lots in 1919, the question in dispute being the March 1,1913, value of the lots.
In June, 1919, the taxpayer began the construction of a seven-story hotel building at Eastland, Tex. By the latter part of October of the same year the basement was almost completed when the-taxpayer caused the work to be discontinued by the contractor. No work was done on the building after November 1,. 1919. The taxpayer claims that he definitely abandoned the plan for the completion of the hotel in October, 1919, due to a change in business conditions in that vicinity, and sustained a loss on the project of $45,257.90. Expenses to the extent of $7,922.17 were incurred in connection with this project which were not paid until some time after the work was abandoned. The Commissioner contends that the hotel project was not abandoned, if at all, until 1920, as the taxpayer, on April 1, 1920, sent messages, which are set out in the findings of fact, to the architect who had prepared the plans and specifications and who was to supervise the construction of the building, and that the messages indicated that the taxpayer had not abandoned the project but had in mind continuing it. We are of the opinion from the evidence that the project was actually abandoned by the taxpayer in 1919.
The further question then arises whether, since the foundation of the building became a part of the realty, the taxpayer is entitled to deduct any loss under the decision of this Board in Appeal of A. J. Schwarzler Co., 3 B. T. A. 535. We are of the opinion that the decision in that appeal has no application to the facts presented in this. In that case it appeared that the taxpayer owned certain real estate, the cost of which he sought to deduct as a loss on the ground that it was without value and had been abandoned. It appeared that title was still in the taxpayer and the loss was not allowed. While the foundation of the proposed hotel involved in this appeal became, technically, a part of the real estate, the taxpayer does not claim a loss based on the abandonment of real estate, but upon the abandonment of a business venture. The project *366 was abandoned in 1919, it was never renewed, and no additional value to the real estate resulted.
In our opinion there is a distinct and very real difference between an attempt to abandon real estate or beneficial improvements placed thereon and the abandonment of an independent business undertaking in which an addition to real estate has been made as a part of that undertaking, but has never reached the stage where it increases the value of the real property. Amounts invested in a business enterprise are allowable as deductions for losses in the year in which the enterprise is finally wound up or abandoned, and it seems that under the circumstances of this appeal the taxpayer should be allowed to deduct in 19Í9 the amount expended in connection with the hotel venture.
The second issue involved in this appeal is the amount of the loss sustained by the taxpayer on account of his participation in the railroad project referred to in the findings of fact. In 1918 the taxpayer and several others undertook to construct a railroad to improve transportation facilities to meet the demands of the newly developed oil fields in and about Eastland. The taxpayer subscribed for a large amount of capital stock in said railroad corporation and turned over to it during the year 1919 land for right of way, depot and terminal purposes. The taxpayer was to receive stock in said railroad corporation for the cash subscribed and the value of the land. The amount of money subscribed was all paid over to the railroad company during the year 1919, except the sum of $6,194.26, which was not paid by the taxpayer until 1920, although a liability to pay such amount was incurred during 1919. In the latter part of 1919, it became apparent, by reason of competing interests, that the taxpayer and his associates would be unable to complete the undertaking successfully. They then decided to discontinue the project, but owing to certain obligations which the corporation had assumed they were unable to abandon the work. They succeeded in interesting Ri'ngling in the undertaking and entered into an oral contract with him during the latter part of October, 1919, to complete the project, which agreement was later reduced to writing and is set out in the findings. The taxpayer was not reimbursed for the amount of money expended on the railroad project or for the land which was used for right of way, depot and terminal purposes. The transaction taken as a whole amounted to a purchase and sale of stock. The consideration received was the release from further performance of the contract, and did not return to the taxpayer the cost of the stock, which became a total loss to him. The cost of the stock was the cash paid in 1919 and 1920 and the value of the land at the time paid in, which value we find to be $29,000.
*367 The other issue involved in this appeal is the gain realized by taxpayer on account of the sale of lots during 1919. The taxpayer had acquired certain lots prior to March 1, 1913, which included a subdivision in the residential district of Eastland, known as the Connellee Place Addition. The cost of this land was less than the March 1, 1913, value. There is no dispute about the amount received by the taxpayer for the lots sold during the year 1919 as set out in the findings. The question involved is the fair market value of the lots on March 1, 1913.
The taxpayer has been engaged in the real estate business in East-land for over forty years and is recognized as authority on real estate values. According to his testimony, the fair market value of the lots in question on March 1, 1913, was $22,100. This value is based on his experience in buying and selling lots and other real estate in that vicinity. The lots in question were not sold or offered for sale in 1913, but other lots in the vicinity were sold during that year at prices which support the values claimed by the taxpayer on the lots here involved. This value is supported by the testimony of several other witnesses who had lived in that town for a number of years and who were familiar with the location of the property and the values in 1913.
The Commissioner has placed a value as of March 1, 1913, on the lots sold at $12,356.39. Two witnesses testified on behalf of the Commissioner as to the acreage value on March 1, 1913, of the land here involved. One of these witnesses testified that the land in question was, on March 1, 1913, worth $40 per acre, and the other testified that it was worth $400 per acre on the same date. This evidence is so varying and indefinite as to be of little value in arriving at a fair market value on March 1, 1913. The lots in question were sold by the taxpayer at $39,360. The evidence submitted is sufficient to support, the claim .made by the taxpayer that the fair market value on March 1, 1913, was $22,100.

Order of redetermination will be entered on 15 days’ notice, under Rule 50,

Marquette and Sternhagen dissent.